UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

     v.                                      CASE NO. 8:12-cr-457-T-30MAP

ARNOLD MAURICE MATHIS
_____/

## REPORT AND RECOMMENDATION

Mathis, a registered sex offender, candidly admitted to his caller that he had sexually battered the caller years before when the caller was a minor. Unbeknownst to Mathis, deputies were listening to the conversation. When deputies arrested Mathis for the sexual battery, they seized from his person his smartphone, the same one that the caller had dialed days earlier. A search of the phone done pursuant to a warrant revealed not only the record of the monitored call but also photographs of child pornography and incriminatory text messages. Now charged with offenses related to the sexual exploitation of minors, Mathis moves to suppress the seized evidence claiming the warrant's application was based on stale and recklessly misleading information which, if excluded, negates probable cause (doc. 15). *See Franks v. Delaware*, 438 U.S. 154 (1978). After an evidentiary hearing on the matter, I find the affiant did not recklessly mislead the reviewing judge and searching deputies acted in "good faith" when executing the warrant, *see United States v. Leon*, 468 U.S. 897, 922-23 (1984); accordingly, I recommend the motion be denied for the reasons set out below.[1]

---

[1] The district judge referred the motion to me for a report and recommendation. *See* 28 U.S.C. § 636.

*A. Background*

The affidavit's relevant facts are summarized as follows.[2] On December 22, 2011, Deputy Zulaika Vizcarrondo with the Polk County Sheriff's Office ("PSCO") informed a state court judge in a sworn application that a 21 year old man named Jarvis Jiles had filed a formal complaint days before with the PCSO alleging that Arnold Mathis had sexually molested him several times in 2004 and 2005. At that time, Jiles was 14 and 15 years old and in high school. Jiles explicitly detailed the sexual encounters and Mathis's conduct, including one episode where Mathis and another adult abused him and another minor in Orlando. Jiles added that Mathis communicated then by cell phone and texts. To verify Jiles's account, deputies had Jiles place a controlled call to Mathis using the same cellular phone number as before. Mathis, a registered sex offender when he sexually battered Jiles, candidly corroborated Jiles's account during their conversation. Deputies arrested Mathis soon thereafter. In his possession was the smartphone Jiles had called.

Days later, Deputy Vizcarrondo presented an application to a state court judge asking for authorization to search Mathis's smartphone stating that "potential evidence may exist relating to the criminal investigation into the above matters," given that "cellular phones contain a diverse amount of information including but not limited to the user's associate contacts, appointments, text messages sent and received, calls sent/received and missed, and voice mails." This would include a record of the controlled call Jiles made to Mathis on

---

[2] A copy of the application and the search warrant is appended to the government's response. *See* doc. 16-1.

2

December 17, 2011.[3] But Vizcarrondo also noted that from her training in child sexual abuse matters, "there are certain characteristics common to many individuals involved in the communications made between the suspect and victim … These suspects sometimes possess and maintain 'soft copies' of such communication in the privacy and security of their personal cell phones and retain these for many years." A forensic analysis in a controlled environment would be required to extract hidden, erased, or password-protected information. Accordingly, Vizcarrondo asked for the issuance of a warrant to forensically examine Mathis's phone for "[a]ny files that may contain…information of evidentiary value pertaining to the investigation of the sexual battery of a minor and/or the conspiracy to commit sexual battery of a minor." The judge authorized the warrant.

The forensic examination revealed not only the logged calls Jiles made to Mathis, but also numerous photographs of male genitalia (four of these pertain to the victims in this case); evidence of text and phone communications with two minor victims in state prosecutions involving Mathis; a contact list that includes the names of others purportedly sharing in Mathis's interest in children; and text messages detailing Mathis's interest in children. Aside from the log of the controlled calls, none of these items connected Mathis to Jiles other than to show Mathis's continued sexual interest in minors.

From all this, Mathis posits a variety of reasons to suppress the seized evidence: Vizcarrondo recklessly misled the authorizing judge to believe that the cell phone to be

---

[3] Jiles actually placed two controlled calls to Mathis, one on December 16 and the other on December 17. Vizcarrondo only mentioned the December 17 call in her affidavit.

3

searched was the same one Mathis possessed in 2005 and that it would include evidence from 2005 (the *Franks* argument); the authorizing judge relied on impermissibly years-old information (a staleness argument); the affidavit lacked any indicia of probable cause making any reliance objectionably unreasonable or the state judge wholly abandoned his judicial role (a facial attack); and if none of the above apply, the search exceeded the warrant's permissible scope. As for the government, while it concedes Mathis's factual premise (smartphones did not exist in 2005), it argues against suppression citing its host of reasons: probable cause certainly existed for evidence of the controlled calls Jiles made to Mathis; Vizcarrondo did not mislead the judge to believe the seized phone was the same one from 2005; a fair probability existed that information on the phone would be archived from 2005; if not, Vizcarrondo acted in "good faith"; and, in any event, the forensic examiner did not exceed the bounds of the warrant in finding the incriminating files (this latter assertion includes arguments based on a "plain view" analysis or a combination of "good faith" and a "within the scope" rationales).

   *B. Discussion*

   The analytical starting point of course is the Fourth Amendment which requires that warrants issue only upon probable cause. When presented with an application for a warrant, the reviewing judge's task is simple and straightforward: "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of crime will be found in a particular place."

*Illinois v. Gates*, 462 U.S. 213, 238 (1983). The concept is "fluid" and requires assessing the probabilities in particular factual contexts while allowing the presenting officer to make "common-sense conclusions about human behavior." *Id.* at 231-232. But the examination of the probabilities "does not demand any showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742 (1983).

As for this Court's review, the warrant and its supporting affidavit are presumptively valid; the supporting affidavit should not to be examined in a hypertechnical manner; and a realistic and commonsense approach is to be used, with "great deference" being given to authorizing judge's probable cause determination. *Leon*, 468 U.S. at 914; *Gates*, 462 U.S. at 236; *Franks*, 438 U.S. at 171; *United States v. Ventresca*, 380 U.S. 102, 109 (1965). Accordingly, even the doubtful or marginal search under a warrant may be sustainable where one without a warrant would fail. *Leon*, 462 U.S. at 914; *Ventresca*, 380 U.S. at 106. Mathis bears the burden of showing invalidity. *United States v. Osborne*, 630 F.2d 374, 377 (5th Cir. 1980).[4] And because he claims Vizcarrondo recklessly misled the state court judge, his bar is notably high. *Franks* requires Mathis make a "substantial preliminary showing" the deputy made a "false statement knowingly and intentionally, or with reckless disregard for the truth." *Franks*, 438 U.S. at 155.[5] If he satisfies this threshold demand, *Franks* then

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as precedent the decisions the former Fifth Circuit rendered prior to October 1, 1981.

[5] A "reckless disregard for the truth" includes instances where the affiant "should have recognized the error, or at least harbored serious doubts" about his representations. *United States v. Kirk,* 781 F.2d 1498, 1502-03 (11th Cir. 1986). But negligence or innocent

requires this Court set aside the disputed material and examine the remaining affidavit. If the redacted application supports a probable cause finding, no hearing is necessary. If it does not, the Fourth Amendment requires a hearing. *Franks*, 438 U.S. at 171-172. Lastly, if a *Franks* hearing was necessary, Mathis would have to show by a preponderance of the evidence his claims of perjury or reckless disregard. And if he were to accomplish that, this Court, like at the previous stage, must set aside the tainted material and decide if the edited application supplies probable cause. If it does not, the warrant is void, and the fruits of the search must be excluded to the same extent as if the face of the affidavit lacked probable cause. *Franks*, 438 U.S. at 156.

### 1. *the warrant's scope*

Even Mathis concedes that a search of the smartphone would evidence the recent calls Jiles made to Mathis. Therefore, redacting the misleading material from the application, as *Franks* requires, would not make the application wholly invalid. But did the warrant limit the search to the sexual battery of Jiles in 2005 as Mathis presumes? If so, is the search invalid?

The Fourth Amendment requires the warrant particularly describe the place to be searched and the person or things to be seized. *Groh v. Ramirez*, 540 U.S. 551, 557 (2004). And the fact that an application adequately describes the things to be seized does not save the warrant from facial invalidity. *Id.* The warrant's description is the roadmap, not its

---

mistakes do not violate the Fourth Amendment. *Madiwale v. Savaiko*, 117 F.3d 1321, 1326 (11th Cir. 1997). Although *Franks* dealt with false statements, the Eleventh Circuit also applies its reasoning to omissions. *Madiwale*, 117 F.3d at 1326-27.

supporting documents. *Id.* Mathis's warrant directed the search of the smartphone for the following evidence:

1. Archived, saved or stored phone numbers, voicemail, electronic mail, text messages or photographs saved to the cellular phone's storage media card or other internal storage device that contains information of evidentiary value pertaining to the investigation of the sexual battery of a minor and/or the conspiracy to commit sexual battery of a minor.

2. Any files that may contain information saved in the cellular phone's Settings, User Information, Contact Lists, Recent Calls, Missed Calls, Calls Received, Voicemails, or any other information stored in said phone regarding information of evidentiary value pertaining to the investigation of the sexual battery of a minor and/or the conspiracy to commit sexual battery of a minor.[6]

The warrant's plain language authorizes a search for evidentiary items "pertaining to the investigation of the sexual battery of *a minor*," as opposed to evidence pertaining only to Mathis's interactions with Jiles in 2004-2005. And the application's facts, using a "totality of the circumstances" standard, supports this broader, more generic view. For example, Vizcarrondo informed the state court judge that Mathis was a registered sex offender when he first encountered Jiles; Mathis had engaged in such conduct with others, thereby inferring his familiarity with a network of like-minded individuals; Mathis had engaged in such conduct over a course of time (from at least the date of the offense for which he had been required to register as a sex offender through his encounters with Jiles; that Mathis had no hesitancy in detailing his sexual batteries of Jiles years later; that this behavior showed Mathis was still interested in such sexual encounters; and that Mathis

---

[6] Doc. 16-1 at p. 3.

7

currently served as a youth pastor in Lake Wales. Considering that this Court must avoid looking at the warrant hypertechnically and instead read it commonsensically, *see Gates,* 462 U.S. at 236, I find the warrant authorized the search for a evidence related to a category of crime – the sexual battery of a minor. That category includes evidence of the type Mathis seeks to suppress.

But even if the application, as opposed to the warrant, is not as expansive as I read it, authorities clearly had the right to look for the recently logged calls. Mathis admits as much; he just says they should not have looked at anything else and the "anything else" should be suppressed. But total suppression of all seized items, even those beyond the warrant's scope, is inappropriate unless the executing officer's conduct "exceeded *any* reasonable interpretation of the warrant's provisions." *United States v. Khanani*, 502 F.3d 1281, 1290 (11th Cir. 2007) (emphasis added) citing *United States v. Wuagneux*, 683 F.2d 1343, 1354 (11th Cir. 1982). And this point particularly applies here. The evidence suggests that Vizcarrondo did not execute the warrant; a technical analyst did the forensic work. That analyst's interpretation of the warrant, and whether it was reasonable or not, is at the heart of Mathis's claim. The warrant's description of the items to be seized did not limit the search to Mathis's encounters with Jiles. And that reading fits within the "any reasonable interpretation" of the warrant's authorized scope. Moreover, a forensic analysis like the one conducted here must allow for a practical margin of flexibility. *Wuagneux*, 683 F.2d at 1349 ("reading the warrant with practical flexibility entails an awareness of the difficulty of piecing together the 'paper puzzle'").

### 2. *Leon's good faith exceptions*

*Leon's* good-faith bar stands for the proposition that district courts should not wield the exclusionary rule when police acted reasonably under a search warrant later found wanting in probable cause. While *Leon* carves out exceptions to this rule, the rule's application presumes the warrant's invalidity. *See* 1 Wayne R. LaFave, *Search and Seizure*, § 1.3(f) (5th ed). Here, Mathis contends every *Leon* exception applies to render the warrant invalid and the exclusionary rule valid : (1) Vizcarrondo misled the authorizing judge with information she knew was false or would have known as false except for her reckless disregard for the truth (the *Franks's* argument he cannot meet); (2) the issuing judge "wholly abandoned his judicial role in the manner condemned in *Lo-Jo Sales, Inc. v. New York*, 442 U.S. 319 (1979)"; (3) the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; and (4) depending on the particular circumstances here, the warrant is so "facially deficient – i.e., in failing to particularize the place to be searched or the things to be seized – that the executing officers cannot reasonably presume it to be valid." *Leon*, 468 U.S. at 923; *United States v. Martin*, 297 F.3d 1308, 1313 (11th Cir. 2002).

### a. *Franks*

Mathis points to the obvious – he could not have owned the seized phone in 2005 – and draws the conclusion he hopes the Court will accept – Vizcarrondo recklessly misled the authorizing judge to believe otherwise. But Mathis's reasoning skips over some reasonable assumptions about the reviewing judge's digital experience and sidesteps critical details that

9

Vizcarrondo provided him. Looking at the application with a practical, deferential view, Vizcarrondo said more to the judge than Mathis acknowledges.

Cell phones, smart phones, and the marketing of these products are ubiquitous in our digital-age society. According to a recently published report, about 235 million Americans use cell phones with about 114 million of these being smartphone users. A staggering number considering our population totals about 310 million.[7] Obviously, the safe bets are that the authorizing judge possessed a cell phone or a smartphone (more likely), had changed out old cell phones for new ones several times, and had data transferred from an old phone to a new one. While he may not have known to what extent data from one phone could be migrated to another (a circumstance that lurks underneath the arguments Mathis makes), the concept would not have been foreign to him. Indeed, who knows how many computers the authorizing judge had used over time and to what extent he had data exchanged from the old to the new. Mathis's smartphone (an Android) after all was essentially a hand-held computer.[8] These assumptions are just commonsensical and supply context for the probable cause calculus.

When Vizcarrondo described Mathis's phone down to the make (Sprint) and model number ("one black Sprint 4G HTC cell phone … [followed by the serial number]"), her

---

[7] *See http://www.businessinsider.com/us-smartphone-market-2012-9.*

[8] Android is an open-source mobile software platform developed by Google, Inc. Any handset manufacturer can install the platform on a device as evidence by the fact that more than 300 Android smartphones are available on the market. *Apple Inc. v. Samsung Electronics Co., Ltd.*, 695 F.3d 1370, 1373 (Fed. Cir. 2012).

specificity permitted the judge to draw reasonable conclusions about the phone's whereabouts and its newness. For example, although Vizcarrondo admittedly did not say in her affidavit that she had seized Mathis's smartphone, a fair reading of her work necessarily points to the conclusion that she possessed the device. Otherwise, how could she have know its model and serial numbers? While she did not explicitly say that the seized phone was not Mathis's 2005 phone, the details she provided could only lead to that deduction. Her reference to a "4G" cell phone signified a smartphone capable of accessing the most recent mobile band network (i.e., as compared to the older "3G" network) for connecting to the internet, a network that Sprint and other providers heavily market on all media forms. She reported that in her experience, it was not uncommon to find that sexual abusers of children maintained "soft copies" or "archived" files and that a forensic examination in a controlled environment could reveal "hidden, erased, compressed, password-protected, or encrypted files … [and that] computer and cellular phone evidence is extremely vulnerable to tampering or destruction …" These comments refer to a cellular phone that is more sophisticated than a simple, basic model from six years ago. And lastly, Vizcarrondo's description tells this Court something about her veracity. Namely, her specificity, and the reasonable inferences taken thereby, contradict Mathis's *Franks* allegations. While the deputy could have more plainly said that Mathis's phone in 2005 and 2011 were not one and the same, Mathis has not satisfied *Franks's* substantial preliminary showing that Vizcarrondo acted with "reckless disregard for the truth" or that she "should have recognized the error, or at least harbored serious doubts" about her representations.

11

*Kirk,* 781 F.2d at 1502-03.

### b. *staleness*

Mathis's staleness argument is factually related to a premise of his *Franks* argument (the 2005 evidence could not be on the 2011 smartphone) and offered to support the applicability of *Leon's* third exception (*supra*, making the warrant "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"). The staleness concept is just a commonsensical metric for evaluating probable cause in a search warrant application – the supporting information must be timely in order to believe that a fair probability exists for finding particular evidence at a particular place. *United States v. Bervaldi*, 226 F.3d 1256, 1264-65 (11th Cir. 2000). No particular date serves as a temporal boundary; rather, the peculiar facts of the case inform the decision. *Id.* Courts often look for certain clues: the nature of the crimes, the habits of the accused, the character of the items sought, and the nature and function of the items to be seized. *Id.* These guideposts have some value here, but the cases applying these considerations mostly deal with physical things. Digital files are qualitatively different. Even if a file or digital object is deleted, a forensic examiner will often be able to recover the deleted item. And the file, and particularly its associated metadata, says more than the file's user likely knows. Moreover, the file's label name may not mean much, for files can be purposely mislabeled, hidden, or encrypted. The Eleventh Circuit, in an unpublished opinion, has recognized that in child pornography cases, courts frequently rely on the inference that the suspect is collector of child pornography and therefore unlikely to dispose of images. *United States v. Schwinn*,

376 Fed.Appx, 974, 979 (11th Cir. 2010). But even this perspective devalues the durability of digital files. "The concern with "staleness' versus freshness and 'collecting' versus destroying reflects a misunderstanding of computer technology. *See e.g., United States v. Seiver*, 692 F.3d 774, 776 (7th Cir. 2012); *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010) ("computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted, or viewed via the internet").

Mathis recognizes as much because he presented a forensic analyst (Adam Sharp) to give an opinion about the migration of data from one cell phone platform to another. That expert opined that it was not likely that 2004-2005 data from Mathis's old phone would be found on the seized smartphone because of the differences between their operating systems. Nonetheless, the analyst conceded that text messages could be transferred to other media sources and that contacts can be transferred on a SIM card. The government, in contrast, did not present an expert; however, Vizcarrondo's supervisor testified that Vizcarrondo had conferred with an analyst within their agency before presenting the application.

The six-year period here stretches the permissible temporal boundaries. As for Jiles's text messages, I find that it exceeded the acceptable limits, although this finding is meaningless for probable cause purposes. As for Mathis's contact list or photos, I find a fair probability existed to believe that Mathis could have entered Jiles's name and personal data and those of the Orlando participants manually into his smartphone's contact list. Such information and any photos associated with his victims or associates can amount to trophies

13

for sexual offenders prone to children. *United States v. Kaechele*, 466 F.Supp.2d 868, 883-84 (E.D. Mich. 2006).[9]

### c. *Leon's remaining exceptions*

For the same reasons, Mathis argues *Leon's* remaining exceptions: the state court judge wholly abandoned his judicial role in the manner condemned in *Lo-Jo Sales, Inc. v. New York*, 442 U.S. 319 (1979), and the warrant is so facially deficient that the executing officers cannot reasonably presume it to be valid. *Leon*, 468 U.S. at 923. Clearly, the state court judge did not abandon his neutral as the authorizing judge in *Lo-Jo Sales* (that judge participated in the search). And the warrant specifically described the item to be searched and the material to be seized. In short, the warrant is not facially deficient.

### D. *Conclusion*

The Supreme Court has emphasized that "reasonableness is the ultimate touchstone for addressing the constitutionality of a search under the Fourth Amendment." *United States v. Steed,* 548 F.3d 961, 967 (11th Cir. 2008). Because I find the search reasonably comported with the Fourth Amendment, I recommend Mathis's motion to suppress (doc. 15)

---

[9] I recognize that Vizcarrondo did not inform the authorizing judge that Mathis had taken pictures of Jiles. To the extent that Mathis argues that no probable cause existed to look at photos, I find that argument unpersuasive. Photos of minors to their sexual abusers are considered as trophies and equate to "tools of the trade." *See United States v. Smith,* 918 F.2d 1501, 1509 (11th Cir. 1990) (finding firearms not named in warrant were properly seized during search of drug house as "tools of the trade"); *United States v. Colbert*, 605 F.3d 573, 578-79 (8th Cir. 2010) ("intuitive relationship between acts such as child molestation or enticement and possession of child pornography"). Admittedly, "reasonable minds … may differ on the question," but the preference for warrants dictates "great deference" be given to the authorizing judge's view. *Leon*, 468 U.S. at 914.

be denied for the reasons stated.

   IT IS SO REPORTED at Tampa, Florida on February 19, 2013.

                 /s/ Mark A. Pizzo
                 MARK A. PIZZO
                 UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

   Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).

cc: Hon. James S. Moody, Jr.
   Counsel of Record